**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JILLIAN FREDERICK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>EDGEWELL PERSONAL CARE, LLC, EDGEWELL PERSONAL CARE BRANDS, LLC, and SCHICK MANUFACTURING, INC.<br><br>*Defendants*. | Case No. 3:25-cv-01663(SFR)<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>March 6, 2026 |

## INTRODUCTION

1. Dermaplaning has become increasingly popular in recent years as a sought-after skincare treatment for its ability to exfoliate the skin and remove fine facial hair, leaving a smooth and radiant complexion. Touted for its immediate results and minimal downtime, this treatment has gained traction on social media and among beauty enthusiasts.

2. In line with this trend, Defendants Edgewell Personal Care, LLC, Edgewell Personal Care Brands, LLC, and Schick Manufacturing, Inc. ("**Defendants**") sell dermaplaning devices directly to consumers—such as the Schick Hydro Silk Dermaplaning Wand, the Schick Hydro Silk Touch-Up Dermaplaning Tool, and the Schik Hydro Silk Touch-Up Exfoliating Dermaplaning Tool ("**Dermaplaning Devices**")—for self-use at home.

3. Defendants advertise that consumers can provide themselves with "expert" care when using these Dermaplaning Devices, for example:




4. But this is not true. The reasonable consumer is not an expert when it comes to using Dermaplaning Devices; licensed aestheticians and dermatologists are. These professionals are trained in the precise and specific techniques required to use these devices safely.

5. Using the Dermaplaning Devices at home without proper knowledge or supervision poses a material risk of serious injury and deformity. Do it yourself ("DIY") dermaplaning can lead to cuts, infections, skin irritation, and even long-term dermatological damage—highlighting the importance of entrusting this procedure to experienced professionals who understand the nuances of skin health and safety.

6. Numerous experts, including medical doctors, have warned against the use of dermaplaning tools without professional supervision, as use of these products by the untrained consumer can cause harm:



[1]

7. Defendants' "expert" care representations on the labeling and marketing materials associated with the Dermaplaning Devices are therefore false, deceptive, misleading, and likely to deceive the reasonable consumer into thinking these products are safe for unsupervised, in-home use ("**Expert Misrepresentations**"). Likewise, Defendants fail to warn consumers of the serious risks associated with at-home dermaplaning—namely, injury and deformity—or inform them that experts recommend that dermaplaning be done or overseen by professionally trained dermatologists or aestheticians ("**Material Omissions**").

8. Plaintiff Jillian Frederick purchased Dermaplaning Devices, specifically Hydro Silk dermaplaning wands, from Defendants in light of the Expert Misrepresentations and Material

[1] https://www.healthline.com/health/beauty-skin-care/dermaplaning-regret#worst-case-scenarios (last accessed May 12, 2025).

Omissions on the products' packaging. Like other consumers, Plaintiff bought the Dermaplaning Devices on the belief she could use them at-home without unreasonable risk or injury or deformity. Indeed, Defendants never informed her of the dangers of using the Dermaplaning Devices without professional supervision or skill. Had Plaintiff known that she could not safely use the Dermaplaning Devices by herself without facing an unreasonable risk of harm, she would not have bought them and certainly would not have paid the price she did.

## PARTIES

***Plaintiff Jillian Frederick***

9. Plaintiff Jillian Frederick is a Florida citizen who, at all times relevant to this litigation, was a resident of San Diego, California.

10. In or around December 2023, Plaintiff Jillian Frederick bought a Hydro Silk Touch Up from Amazon. She made this purchase from her home in San Diego, California, and the product was delivered to Ms. Frederick's home in San Diego, California. She has purchased similar Dermaplaning Devices regularly since 2022.

***Defendants Edgewell Personal Care, LLC, Edgewell Personal Care Brands, LLC, and Schick Manufacturing, Inc.***

11. Edgewell Personal Care, LLC is a Delaware limited liability company with its principal place of business at 6 Research Drive, Shelton, Connecticut.

12. Edgewell Personal Care Brands, LLC is a Delaware limited liability company with its principal place of business at 6 Research Drive, Shelton, Connecticut.

13. Schick Manufacturing, Inc. is a Delaware corporation with its principal place of business at 6 Research Drive, Shelton, Connecticut.

14. Defendants either design, manufacture, market, and/or sell the Dermaplaning Devices at issue in this action.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

16. The Court has personal jurisdiction over Defendants because they sold the products at issue to consumers in Connecticut, and because all Defendants' principal places of business are in Connecticut.

17. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District as if this District were a separate state, given that Defendants sold the products at issue to consumers in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including the decisions regarding the marketing and labeling practices at issue in this case.

## FACTS

### I. Dermaplaning is a popular skincare treatment that comes with major risks when performed without professional supervision.

18. Dermaplaning, a cosmetic procedure involving the removal of dead skin cells and fine facial hair using a sterile blade, has gained significant popularity in recent years. Advocates praise its ability to enhance skin smoothness, improve product absorption, and provide a radiant complexion.

19. Initially a treatment offered in dermatologists' offices and spas, dermaplaning has transitioned into a mainstream beauty practice, with many individuals incorporating it into their skincare routines. The rise of social media platforms has played a pivotal role in this trend, with

numerous beauty influencers and celebrities endorsing the procedure. For instance, on TikTok, the hashtag #Dermaplaning has garnered over 144,000 mentions, reflecting its widespread appeal.

20. Despite its popularity, dermaplaning comes with significant risks. The procedure involves using a sharp blade to exfoliate the skin, which can lead to several potential issues:[2]

> **Skin Irritation and Redness:** Improper technique or excessive pressure can cause skin irritation, redness, or even abrasions. Individuals with sensitive skin or conditions like rosacea may experience heightened sensitivity post-procedure.
>
> **Infection:** Using non-sterile tools or failing to follow proper hygiene practices can introduce bacteria into the skin, leading to infections. This risk is particularly concerning when dermaplaning is performed at home without professional oversight.
>
> **Scarring:** Incorrect use of the blade can result in cuts or nicks, potentially leading to scarring, especially in individuals prone to keloids or hypertrophic scars.
>
> **Exacerbation of Acne:** For those with active acne, dermaplaning can aggravate the condition by spreading bacteria across the face, leading to increased breakouts.

21. These risks have led dermatologists to recommend that dermaplaning be performed by trained professionals.

22. The hazards are even more pronounced when dermaplaning is performed at home. "This is because over-the counter blades usually aren't as sharp as the surgical blades used by professionals…so you might have to press more firmly, increasing the risk of cuts or irritation. Most at-home blades are meant for multiple uses, too. So, the more you use them, the duller they become."[3]

---

[2] *See, e.g.*, "What are Some Side Effects of Dermaplaning?" ROYAL WELLNESS CLINICS (accessible at https://royalwellnessclinic.com/what-are-some-side-effects-of-dermaplaning/); *see also* https://www.webmd.com/beauty/what-is-dermaplaning.

[3] Erica Sweeney, "Is It Safe to Dermaplane My Face?" NEW YORK TIMES, Oct. 1, 2024 (accessible at https://www.nytimes.com/2024/10/01/well/dermaplaning-face-risks-benefits.html).

23. Many dermatologists recommend that individuals should "ideally leave [dermaplaning] to a professional; preferably a dermatologist or an aesthetician experienced with the procedure."[4]

24. Dr. Shasa Hu "doesn't recommend doing dermaplaning at home. It requires a certain level of skill to do it without causing micro-tears or not-so-small cuts…And without using proper sanitizing techniques there could be even worse outcomes…," noting that she had patients who ended up with staph infections after dermaplaning at home.[5]

25. Similarly, on his website, Dr. Paul Fondacaro writes that "when done by a licensed professional, dermaplaning is generally very safe….DIY dermaplaning kits are widely available but they come with increased risks….improper technique can lead to cuts…tools may not be sterile, increasing the risk of infection…without professionally oversight, it's harder to know if you're overdoing it."[6]

26. Dr. Deepa Macha, also on her website, wrote that "[w]hile dermaplaning at a dermatologist's office can be an amazing experience, attempting this at home with the wrong technique or tools could lead to irritation, ingrown hairs, and an unnatural looking result…one wrong move could lead to irritation, infection, or scarring."[7]

---

[4] *Id.*

[5] Althea Chang-Cook, "What Exactly Is Dermaplaning, and Is It Safe?" CONSUMER REPORTS, May 6, 2024 (accessible at https://www.consumerreports.org/health/what-is-dermaplaning-and-is-it-safe-a7086154452/).

[6] https://www.drparkave.com/blog-posts/is-dermaplaning-safe-heres-what-dermatologists-want-you-to-know.

[7] https://cosmediclasermd.com/dermaplaning-at-home-understanding-the-risks-and-limitations-of-self-treatment/.

27. And, in an interview with Good Morning America, Dr. Michelle Henry, a board-certified dermatologist, noted that dermaplaning is a great option for skincare *when performed by a professional or after professional consultation*: "Although dermaplaning is generally safe when performed by a trained professional, it carries risks when attempted at home. Remember to consult with a dermatologist or skin care professional before attempting any new skin care products or procedures to ensure they are suitable for your individual needs and skin condition."[8]

**II. Defendants market consumer direct-to-consumer dermaplaning products as providing expert-level care while omitting the risks of at-home dermaplaning.**

28. Defendants make, market, and sell Dermaplaning Devices for consumers to use at home, including, but not limited to, the Schick Hydro Silk Dermaplaning Wand, the Schick Hydro Silk Touch-Up Dermaplaning Tool, and the Schik Hydro Silk Touch-Up Exfoliating Dermaplaning Tool, in the United States. The Dermaplaning Devices are available nationwide. Upon information and belief, hundreds of thousands (or even millions) of U.S. consumers buy these Dermaplaning Devices.

29. The labeling on the Dermaplaning Devices prominently states: "EXPERT CARE"; "Expert level precision, control, and care"; that the Dermaplaning Devices "Expertly Shape[] Brows"; and that the products are "Dermatologist approved."

30. A sample of these labels is pictured below:

---

[8]https://www.goodmorningamerica.com/shop/story/dermaplaning-home-99515866.


6x 1x
Schick
HYDRO
SILK™
EXPERT CARE
DERMAPLANING
WAND
FACE
WEIGHTED
METAL HANDLE
Gently exfoliates for
glowing skin
Dermatologist approved
6x 1x


Schick
HYDRO
SILK
Expert level precision, control, and care
Précision, maîtrise et soins de niveau expert
Unique micro-guards protect delicate facial skin
Micro-bandes exclusives pour protéger la peau délicate du visage.
Weighted metal handle with non-slip silicone for precise control
Manche lesté en métal avec silicone antiglissante pour assurer une maîtrise optimale.
7 SKIN BENEFITS
· Radiant skin
· Improves skin texture
· Smooths
· Removes fine hairs
· Softens
· Helps absorption of lotions and serums
· Smooth makeup application
7 BIENFAITS CUTANÉS
· Révèle une peau radieuse
· Améliore la texture de la peau
· Rend la peau lisse
· Enlève les poils fins
· Adoucit
· Favorise l'absorption des lotions et des sérums
· Permet une application plus lisse du maquillage
OPEN HERE · OUVRIR ICI
LET'S CONNECT
GARDONS CONTACT
@schickhydrosilk




31. Each of these labels includes Expert Misrepresentations, stating that the tools will allow users to provide themselves with expert-level care when, in fact, there is no substitute for expert supervision when dermaplaning.

32. Moreover, the labels all contain Material Omissions, as none of the labels on the Dermaplaning Devices mention the risks of at-home dermaplaning, nor do they recommend use of

the Dermaplaning Devices in the presence of a professional, such as an aesthetician or dermatologist.

33. In fact, Defendants include a QR code on the product packaging for the Dermaplaning Devices:




34. The QR code on the packaging directs users to a Schick Hydro Silk advertisement video entitled "Dermaplaning Myths Explained."[9] Defendants explain "common myths" associated with dermaplaning and tell consumers:

> Another common myth and question we often hear about is whether dermaplaning is harmful or painful to your skin. The answer is no. The dermaplaning wand gently glides across your skin and the exfoliating edges are designed with micro-guards to help protect your skin while you dermaplane.

[9]Schick Hydro Silk, *Dermaplaning Myths Explained* (last visited September 5, 2025) available at https://www.youtube.com/watch?v=V23Kx7-9fuY (the "Dermaplaning Video").

35. After Defendants explain dermaplaning "common myths," they end the Dermaplaning Video with instructions to consumers: "As long as you're following the directions and using an expert level tool like the hydro silk dermaplaning wand, you will get the professional quality results you're after."

36. Defendants' other advertisements further and affirmatively state that the Dermaplaning Devices are "[e]asy to use—even for beginners."




37. The design and marketing of each of Defendants' Dermaplaning Devices are substantially similar. They all contain Expert Misrepresentations and Material Omissions which create a belief in the reasonable consumer that they are in such a way to allow an untrained person to expertly use the Dermaplaning Devices at home, in a reasonably safe manner, outside the presence of a professional dermatologist or aesthetician.

**III. Defendants' labeling is false and misleading.**

38. By selling direct-to-consumer Dermaplaning Devices labeled with Expert Misrepresentations that, among other things, claim that the products provide "[e]xpert level" precision, control, and care, Defendants are representing to customers that using the Dermaplaning Devices gives them give the same level of care as an expert or professional when dermaplaning.

39. As discussed above, this is simply not true. While dermaplaning may be safely done in the presence of professionals, it carries serious risks of cuts, infections, scarring, and acne, among other things, if done at home without professional supervision or consultation. None of these risks can be gleaned from Defendants' labeling.

40. Thus, when a consumer purchases one of Defendants' Dermaplaning Tools, the consumer reasonably believes that they can provide themselves with same level of care when dermaplaning at home as when they go see a professional.

41. Worse, because of Defendants' Material Omissions regarding the serious risks of dermaplaning without professional assistance, no reasonable consumer would know from the products' labeling that using the Dermaplaning Devices jeopardizes their health and could cause injuries.

42. Defendants knew or should have known that this marketing was false because it runs counter to the abovementioned medical guidance and, also, because customer reviews regularly highlighted the dangers of using the Dermaplaning Devices, for example:



[10]

43. One user, who herself is an aesthetician, recommended *against at home use* of the Dermaplaning Devices, stating that she herself had cut her face while dermaplaning with one of Defendants' products:

---

[10] https://www.schick.com/products/schick-hydro-silk-dermaplaning-wand?srsltid=AfmBOoo6vnon0mgsKmgF96djCkokLQtcDGJABoVMs6sWApQVcJdMzFuO (last accessed May 19, 2025).




[11]

44. Defendants, like other large producers of consumer products, monitor and keep track of consumer reviews and complaints. This is diligence that companies like Defendants routinely do when selling a consumer product. Defendants' responses to consumer questions and concerns further evidence that they monitor and see consumer complaints.

**IV. Defendants' Dermaplaning Devices are priced at a premium due to false advertising.**

45. The inaccurate labeling of Defendants' Dermaplaning Devices is highly material to reasonable consumers. The reason that consumers buy the Dermaplaning Devices is because they believe that they allow for safe dermaplaning at home without professional supervision.

[11] *Id.*

46. Similarly, Defendants' false and misleading labeling drives the demand for their Dermaplaning Devices. As explained above, the reason that people buy the products is that they believe they allow for safe dermaplaning without the cost and hassle of undergoing the procedure with an aesthetician or dermatologist. This is exactly what Defendants market through their Expert Misrepresentations.

47. If consumers knew the truth—that the Dermaplaning Devices should only be used in the presence of professionals and that use of the products at home increases the risk of serious injury or deformity—the price of the Dermaplaning Devices would crater.

48. Worse, no consumer would pay the current market price for the Dermaplaning Devices if Defendants did not omit information regarding the serious risks of injury and deformity when dermaplaning without professional supervision. These Material Omissions are critical for Defendants' marketing strategy and overall business model, as the reason that consumers purchase the Dermaplaning Devices is because they believe they allow for safe dermaplaning at home.

49. These Expert Misrepresentations and Material Omissions therefore deprive consumers of the benefit of their bargains. What reasonable person wants to pay for Dermaplaning Devices advertised for use at home that are not only unsafe for that use but increase the risk of serious injury and deformity? Thus, the economic injury here is the price premium attributable to the false and misleading statements and material omissions. Alternatively, because the false and misleading statements and omissions are the reason that reasonable consumers purchase Defendants' Dermaplaning Devices, the economic injury is the entire price of the products that Plaintiff and the Class Members purchased.

**V. Plaintiff was misled and harmed by Defendants' misleading labeling.**

50. In or around December 2023, Plaintiff Jillian Frederick bought a Hydro Silk Touch

Up from Amazon. She made this purchase from her home in San Diego, California, and had the product delivered to her home in California. She has purchased similar Dermaplaning Devices regularly since 2022.

51. The packaging for the Dermaplaning Device purchased by Ms. Frederick was prominently labeled with the phrases “Expertly Shapes Brows and Removes Fine Hairs” and “Expert Care.”

52. The label for that Dermaplaning Device also lacked any warnings about the risks of dermaplaning, nor did it include any information stating that dermaplaning should be done in the presence of professionals.

53. Ms. Frederick relied on the Expert Misrepresentations made on the packaging of the Dermaplaning Device she purchased and the Material Omissions missing from same.

54. Ms. Frederick bought the Dermaplaning Devices because she believed that they were safe and effective for her to use at home. But this proved not to be the case. In fact, while using her Dermaplaning Device, Ms. Frederick suffered minor cuts.

55. Had Ms. Frederick known the truth about the Expert Misrepresentations or been advised of the Material Omissions, she would not have bought the Device Devices and certainly would not have paid the prices she did.

56. Plaintiff wants Defendants to fix their practices and sell Dermaplaning Devices with accurate labeling. If Defendants fix the products so that they are safe to use at home, she would buy them again. But given Defendants’ past deception, Plaintiff cannot rely on Defendants’ word alone that they have fixed the problem. Plaintiff faces an imminent threat of harm because she will not be able to rely on Defendants’ labels in the future and will not be able to buy Defendants’ Dermaplaning Devices, even if Defendants claim to have fixed the issue. To buy

Defendants' Dermaplaning Devices again, Plaintiff needs the Court to enter an order forbidding Defendants from claiming that their products provide "expert" care and omitting mention of the material risk of injury or deformity when using the Dermaplaning Devices without professional supervision or guidance.

**V. No adequate remedy at law.**

57. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

58. A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Dermaplaning Devices she received have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendants' Expert Misrepresentations and Material Omissions. Obtaining a full refund at law is less certain than obtaining a refund in equity.

59. Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## FED. R. CIV. P. 9(b) ALLEGATIONS
## (Affirmative and By Omission)

60. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Defendants are in the best position to know what content they placed on their Products' labeling and marketing materials during the relevant timeframe, to the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

61. **Who:** Defendants made material misrepresentations and/or omissions of fact, through their Expert Misrepresentations and Material Omissions, on their product packaging, warranties, owner's manuals, labeling and marketing, and through authorized retailers of the Dermaplaning Devices, which include statements about the Dermaplaning Devices providing expert-level care, control, and precision, and omitting any mention of the material risks.

62. **What:** Defendants' conduct here was, and continues to be, fraudulent because they omitted and concealed the material risks of the Dermaplaning Devices and made Expert Misrepresentations, at the time of purchase, which falsely claimed the Dermaplaning Devices provided expert-level care, control, and precision. Further, Defendants' conduct has the effect of deceiving Plaintiff and Class Members into believing that the Dermaplaning Devices are safe for at-home use without professional supervision or consultation. Defendants knew or should have known this safety information is material to the reasonable consumer, including Plaintiff and Class Members, and impacts their purchasing decision, and yet they omit a necessary warning about the material risks associated with the Dermaplaning Devices.

63. **When:** Defendants made the material misrepresentations and/or omissions, as a part of their Expert Misrepresentations and Material Omissions, detailed herein at the time Plaintiff and Class Members performed research on the Dermaplaning Devices to gather information that would aid them in selecting the best product to purchase and at the time Plaintiff and Class Members purchased the Dermaplaning Devices.

64. **Where:** Defendants' Expert Misrepresentations and Material Omissions were made on the Dermaplaning Devices labeling, packaging, and marketing materials, by Defendants and employees and/or agents of Defendants.

65. **How:** Defendants made written misrepresentations and/or failed to disclose material facts regarding the true safety risks and serious dangers created by normal use of the Dermaplaning Devices in written form, electronic form, or conventional hardcopy form, as well as verbally through statements made by their employees and authorized retailers as a part of their Expert Misrepresentations and Material Omissions.

66. **Why:** Defendants engaged made the Expert Misrepresentations and Material Omissions for the express purpose of inducing Plaintiff, Class Members, and other reasonable consumers to purchase and/or pay for the Dermaplaning Devices. Defendants profited by selling the Dermaplaning Devices to millions of consumers, and consciously chose profits over safety for consumers.

67. **Injury:** Plaintiff and Class Members purchased the Dermaplaning Devices when they otherwise would not have absent Defendants' Expert Misrepresentations and Material Omissions, or, alternatively, paid more for the Dermaplaning Devices than they would have absent the same.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

### I. Continuing Act Tolling

68. Defendants have continuously marketed and sold the Dermaplaning Devices to consumers.

69. They continuously represented that the Dermaplaning Devices provide expert-level care, control, and precision, and that the Dermaplaning Devices are safe for at home use.

70. By continuously repeating Expert Misrepresentations and failing to disclose the material risks through the systematic Material Omissions, Defendants engaged in a continuing

wrong sufficient to render inapplicable any statute of limitations that Defendants might seek to apply.

71. As the creator and manufacturer of the Dermaplaning Devices, Defendants have had actual knowledge that the Dermaplaning Devices pose material risks to consumers when used without professional supervision or consultations.

72. Yet Defendants knowingly continued to market the Dermaplaning Devices as providing expert-level care, control, and precision, and omit any warnings of the material risks.

73. Plaintiff's and other Class Members' claims are not time barred.

74. Plaintiff and other Class Members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect that Defendants knowingly made Expert Misrepresentations and Material Omissions about the Dermaplaning Devices to consumers in the United States and elsewhere.

75. Therefore, no potentially relevant statute of limitations should apply.

**II. Fraudulent Concealment Tolling**

76. Throughout the time period relevant to this action, Defendants made affirmative misrepresentations and concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the Dermaplaning Devices.

77. Defendants kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims.

78. As a result, neither Plaintiff nor the other Class Members could have uncovered the Expert Misrepresentations and Material Omissions, even upon reasonable exercise of due diligence.

79. Defendants had a duty to disclose to Plaintiff and the other Class Members the true quality and nature of the Dermaplaning Devices, that the Dermaplaning Devices pose safety concerns when not used in the presence of professionals or after consultation with professionals.

80. This duty arose, among other things, from Defendants' explicit representations that the Dermaplaning Devices were safe and suitable for at-home use through the Expert Misrepresentations.

81. Throughout the Class Period, at all relevant times, Defendants have known that the Dermaplaning Devices, which they designed, manufactured, selected materials for and sold, posed material risks.

82. Despite the Defendants' knowledge the material risks posed by the Dermaplaning Devices, Defendants made Expert Misrepresentation and Material Omissions to Plaintiff and other Class Members, even though, at any point in time, they could have disclosed the risks on the labels of their Products.

83. Instead, Defendants continue to market the Dermaplaning Devices as suitable for their intended purpose.

84. The purpose of Defendants' concealment is and was to continue to profit from the sale of their popular Products and to prevent Plaintiff and other Class Members from seeking redress.

85. Plaintiff and the other Class Members justifiably relied on Defendants to disclose the true nature of the Dermaplaning Devices they purchased and/or owned because the material risks were not discoverable by Plaintiff and the other Class Members through reasonable efforts.

86. Any applicable statute of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which is ongoing.

## III. Discovery Rule Tolling

87. Plaintiff and other Class Members could not have discovered through the exercise of reasonable diligence that their Dermaplaning Devices posed safety risks when used without professional support or consultation within the time-period of any applicable statutes of limitation.

88. Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Dermaplaning Devices contain the material risks.

89. There is no evidence that Plaintiff was aware of the Dermaplaning Devices' safety risks. Defendants have concealed and misrepresented the dangerous risks in the Dermaplaning Devices.

90. Plaintiff and other Class Members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect that Defendants knowingly failed to disclose material information within their knowledge about the material risks to consumers in the U.S. and elsewhere.

91. As such, no potentially relevant statute of limitations should be applied.

## IV. Estoppel

92. Defendants were, and are, under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Dermaplaning Devices. Defendants knowingly, affirmatively, and actively concealed the true character, quality and nature of the Dermaplaning Devices, and the concealment is on-going. Defendants knew the serious safety hazards the Dermaplaning Devices posed to consumers and has actively concealed them. Plaintiff and the Class reasonably relied on Defendants' Material Omissions. For these reasons, Defendants are estopped from relying on any statute of limitations in defense of this action.

93. Additionally, Defendants are estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ACTION ALLEGATIONS

94. Plaintiff brings the asserted claims on behalf of the proposed class of:

> **Nationwide Class**: all persons who purchased one or more Defendants' Dermaplaning Devices.

Plaintiff also brings the asserted claims on behalf of the California Subclass, defined below:

> **California Subclass**: all persons who, while in the state of California, purchased one or more of Defendants' Dermaplaning Devices.

95. The Nationwide Class and California Subclass are referred to collectively at times as "the Class."

96. The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) persons pursuing claims for personal injury or wrongful death caused by use of the Dermaplaning Devices (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (7) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

97. The Class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of Class Members.

98. Class Members can be readily identified through Defendants' and third-party sales records and public notice.

***Predominance of Common Questions***

99. There are questions of law and fact common to the Class. Common questions of law and fact include, without limitation:

(1) whether Defendants made false or misleading statements of fact in their labeling;

(2) whether Defendants omitted material information from their labels;

(3) whether these false or misleading statements and omissions were material to a reasonable consumer;

(4) whether Defendants violated California's consumer protection statutes;

(5) whether Defendants committed a breach of an express or implied warranty;

(6) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

100. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased the Dermaplaning Devices. Like the proposed Class, Plaintiff was unaware of the Material Omissions or the falsity of the Expert Misrepresentations on Defendants' labels. And, the factual basis of Defendants' conduct is common to the Class, since Defendants' labels were substantially similar on all Dermaplaning Devices. There are no conflicts of interest between Plaintiff and the Class. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class Members she seeks to represent.

***Superiority***

101. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would

be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the same legal and factual issues presented in this lawsuit.

## CLAIMS

### Count I
### Violation of California's False Advertising Law Bus. & Prof. Code § 17500 & 17501 et. seq. (By Plaintiff and the California Subclass)

102. Plaintiff Jillian Frederick incorporates each and every factual allegation set forth above.

103. Ms. Frederick brings this cause of action on behalf of herself and members of the California Subclass.

104. Defendants violated Sections 17500 and 17501 of the Business and Professions Code.

105. Defendants violated, and continue to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Subclass Members.

106. As alleged more fully above, Defendants falsely advertised their Dermaplaning Devices by falsely representing that their Dermaplaning Devices provide "Expert Care" for users dermaplaning their bodies at home.

107. Moreover, Defendants made Material Omissions on the Dermaplaning Devices' labels, failing to disclose the material risks associated with dermaplaning at home without professional supervision or consultation.

108. Defendants' Expert Misrepresentations and Material Omissions were intended to induce reliance, and Ms. Frederick saw, read, and reasonably relied on the statements and

omissions when purchasing the Dermaplaning Devices. In addition, Subclass-wide reliance can be inferred because Defendants' Expert Misrepresentations and Material Omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dermaplaning Devices.

109. Defendants' misrepresentations were a substantial factor in Ms. Frederick's purchase decision and the purchase decision of Subclass Members.

110. Ms. Frederick and Subclass Members were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Dermaplaning Devices at the price they paid if not for the Expert Misrepresentations and Material Omissions. Said another way, Ms. Frederick and the Subclass would not have paid the price they did for the Dermaplaning Devices had known that the Dermaplaning Devices do not actually provide "Expert Care" for users, in fact, increase the likelihood of material risks when used without professional supervision.

**Count II**
**Violation of California's Consumer Legal Remedies Act.**
**(By Plaintiff and the California Subclass)**

111. Plaintiff Jillian Frederick incorporates each and every factual allegation set forth above.

112. Ms. Frederick brings this cause of action on behalf of herself and members of the California Subclass.

113. Ms. Frederick and the Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

114. Ms. Frederick and the Subclass have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

115. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

116. As alleged more fully above, Defendants violated the CLRA by falsely representing that their dermaplaning Products provide "Expert Care." Moreover, Defendants omitted crucial information from their labels, failing to disclose that material risks are more likely when the Dermaplaning Devices are used without professional supervision. Both the Expert Misrepresentations and Material Omissions are false and misleading.

117. Defendants knew, or should have known, through the exercise of reasonable care, that these statements and omissions were false and misleading.

118. Defendants violated, and continue to violate, section 1770 of the California Civil Code.

119. Defendants violated, and continue to violate, section 1770(a)(5) of the California Civil Code by representing that Dermaplaning Devices offered for sale have characteristics or benefits that they do not have. Defendants represent that their Dermaplaning Devices provide "Expert Care," when they do not.

120. Defendants violated, and continue to violate, section 1770(a)(7) of the California Civil Code by representing that Dermaplaning Devices offered for sale are of a particular standard, quality, or grade, if they are another. Defendants represent that their Dermaplaning Devices provide "Expert Care," when they do not, and instead increase the likelihood of material risks without professional supervision.

121. And Defendants violated, and continue to violate, section 1770(a)(9) of the California Civil Code. Defendants violated this by advertising their Dermaplaning Devices as being fit for their intended purpose of providing "Expert Care" when dermaplaning, when in fact Defendants do not intend to sell the Dermaplaning Devices as advertised.

122. Defendants' false labeling was likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendants knew, or should have known, through the exercise of reasonable care, that these statements were inaccurate and misleading.

123. Defendants' Expert Misrepresentations and Material Omissions were intended to induce reliance, and Ms. Frederick saw, read, and reasonably relied on the statements (or, in the case of the Material Omissions, did not see them) when purchasing the Dermaplaning Devices. In addition, Subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dermaplaning Devices.

124. Defendants' Expert Misrepresentations and Material Omissions were a substantial factor in Ms. Frederick's purchase decision and the purchase decision of Subclass Members.

125. Ms. Frederick and the Subclass were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Dermaplaning Devices at the price they paid if not for the Expert Misrepresentations and Material Omissions. Said another way, Ms. Frederick and the Subclass would not have paid the price they did for the Dermaplaning Devices had they known that the Dermaplaning Devices do not actually provide "Expert Care" for users, in fact, the devices increase the likelihood of material risks when used without professional supervision.

126. Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Frederick, on behalf of herself and all other members of the Subclass, seeks injunctive relief.

127. CLRA § 1782 NOTICE. On November 21, 2024, a CLRA demand letter was sent to Defendants' parent company, on their registered agent and headquarters via certified mail, that provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged here. Ms. Frederick and the California Subclass now seek all monetary relief allowed under the CLRA.

128. A CLRA venue declaration is appended hereto as Exhibit A.

**Count III**
**Violation of California's Unfair Competition Law**
**(By Plaintiff and the California Subclass)**

129. Plaintiff Jillian Frederick incorporates each and every factual allegation set forth above.

130. Ms. Frederick brings this cause of action on behalf of herself and members of the California Subclass.

131. Defendants violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

132. Defendants violated the unlawful prong of the UCL. Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

133. In addition, Defendants engaged in unlawful conduct by violating the California Health & Safety Code § 109875 et seq. (the Sherman Food Drug and Cosmetic Law) which adopts and parallels federal FDCA requirements, including prohibitions on false and misleading labeling.

134. Defendants violated the fraudulent prong of the UCL. As alleged in detail above, Defendants' representations that their Dermaplaning Devices provided expert care were false and

misleading. These Expert Misrepresentations on the Dermaplaning Devices' labeling are likely to deceive, and did deceive, Ms. Federick and other reasonable consumers.

135. Moreover, Defendants omitted crucial information from their label, failing to disclose that the Dermaplaning Devices increase the likelihood of material risks when used without professional supervision. These Material Omissions on the Dermaplaning Devices' labeling are likely to deceive, and did deceive, Ms. Federick and other reasonable consumers.

136. Defendants violated the unfair prong of the UCL, as detailed above.

137. Defendants' conduct caused substantial injury to Ms. Frederick and Subclass Members. The harm to Ms. Frederick and the Subclass greatly outweighs the public utility of Defendants' conduct (which is none). Inaccurately labeled Dermaplaning Devices have no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

138. Ms. Frederick and the Subclass could not have reasonably avoided this injury. As alleged above, Defendants' labeling is false and misleading. Their labeling is likely to deceive, and did deceive reasonable consumers like Ms. Frederick.

139. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

140. Defendants' conduct violated the public policy against false and misleading labels, which is tethered to the CLRA and the FAL, as well as California's Sherman Act.

141. For all prongs, Defendants' Expert Misrepresentations and Material Omissions were intended to induce reliance, and Ms. Frederick saw, read, and reasonably relied on the statements when purchasing the Dermaplaning Devices. In addition, Subclass-wide reliance can

be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dermaplaning Devices.

142. Defendants' misrepresentations were a substantial factor in Ms. Frederick's purchase decision and the purchase decision of Subclass Members.

143. Ms. Frederick and the Subclass were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Dermaplaning Devices at the price they paid if not for the Expert Misrepresentations and Material Omissions. Said another way, Ms. Frederick and the Subclass would not have paid the price they did for the Dermaplaning Devices had they known that the Dermaplaning Devices do not actually provide "Expert Care" for users, in fact, the devices increase the likelihood of material risks when used without professional supervision.

**Count IV**
**Breach of Express Warranty**
**(by Plaintiff, the Nationwide Class, and the California Subclass)**

144. Plaintiff incorporates each and every factual allegation set forth above.

145. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

146. Defendants, as the manufacturer, marketer, distributor, supplier, and/or seller of the Dermaplaning Devices, issued material, written warranties by representing that the Dermaplaning Devices help provide expert care. This was an affirmation of fact about the Dermaplaning Devices and a promise relating to the goods.

147. This warranty was part of the basis of the bargain, and Plaintiff and Class Members relied on this warranty.

148. In fact, the Dermaplaning Devices do not conform to the above-referenced representation because, as the Dermaplaning Devices do not provide expert care and dermatologists recommend that dermaplaning be done by professionals. Moreover, Defendants omitted crucial information from their label, failing to disclose the material risks of using the Dermaplaning Devices. Thus, through the Expert Misrepresentations and the Material Omissions, the warranty was breached.

149. Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' parent company's headquarters, on November 21, 2024.

150. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing harm, because they would not have purchased the Dermaplaning Devices at the price they paid if they had known that the Dermaplaning Devices have not actually been shown to provide expert care and, in fact, increased the likelihood of material risks.

**Count V**
**Breach of Implied Warranties**
**(by Plaintiff, the Nationwide Class, and the California Subclass)**

151. Plaintiff incorporates each and every factual allegation set forth above.

152. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

153. Defendants impliedly warranted that the Dermaplaning Devices, which Defendants manufactured or sold, were fit for the ordinary purposes for which they were intended to be used. Defendants breached this implied warranty when it manufactured, distributed, and sold the Dermaplaning Devices when they were not fit for the ordinary purpose for which they are used.

154. As described in greater detail above, Defendants impliedly warranted that the Dermaplaning Devices are fit for the purpose of providing expert care and when dermaplaning. But the Dermaplaning Devices do not provide this level of care. Moreover, Defendants omitted crucial information from their label, failing to disclose that the Dermaplaning Devices increased the likelihood of material risks. Thus, through the Expert Misrepresentations and the Material Omissions, the implied warranty was breached.

155. Defendants impliedly warranted that the Dermaplaning Devices, which Defendants manufactured or sold, were fit for the particular purposes for which they were intended to be used.

156. Plaintiff and Class Members purchased the Dermaplaning Devices for the particular purpose of providing expert care when dermaplaning.

157. Defendants knew, or had reason to know, that Plaintiff and Class Members were purchasing the Dermaplaning Devices for the particular purpose of providing expert care. Defendants are aware that consumers purchase the Dermaplaning Devices for expert care while dermaplaning, and advertises that it does. Moreover, Defendants were aware that the Dermaplaning Devices increase the likelihood of material safety risks and fail to disclose that on their label.

158. Defendants market themselves as knowledgeable and effective developers and purveyors of personal care products.

159. Defendants knew, or had reason to know, that Plaintiff and Class Members would justifiably rely on Defendants' particular skill and knowledge of personal care products in selecting or furnishing such products to safely care for their skin.

160. Plaintiff and Class Members did justifiably rely on Defendants' judgment and skill.

161. Defendants breached their implied warranty of fitness when it manufactured, distributed, and sold the Dermaplaning Devices that do not provide expert care, despite advertising that they do. Defendants further breached their implied warranty by omitting information regarding the material risks associated with the Dermaplaning Devices. These Dermaplaning Devices, when sold and at all times thereafter, were not fit for the particular purpose for which consumers purchased them.

162. Plaintiff and the Class Members notified Defendants of the breaches of their implied warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendants' parent company's headquarters regarding these breaches on November 21, 2024.

163. Defendants' breaches of these implied warranties deprived Plaintiff and Class Members of the benefits of their bargains.

164. Plaintiff and the Class Members have had sufficient direct dealings with either Defendants or their agents (retailers and technical support) to establish privity of contract between Defendants, on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and their retailers, and specifically, of Defendants' implied warranties. The retailers were not intended to be the ultimate consumers of the Dermaplaning Devices and have no rights under the warranty agreements provided with the Dermaplaning Devices; the warranty agreements were designed for and intended to benefit the consumer only.

165. Affording Defendants a reasonable opportunity to cure their breaches would be unnecessary and futile here, as Defendants have already informed Plaintiff that they will not cure the breaches.

166. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing harm, because they would not have purchased the Dermaplaning Devices if they had known that the Dermaplaning Devices have not actually been shown to provide expert care and, in fact, increased the likelihood of material risks.

## Count VI
## Negligent Misrepresentation/Omission
## (by Plaintiff, the Nationwide Class, and the California Subclass)

167. Plaintiff incorporates each and every factual allegation set forth above.

168. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

169. As alleged more fully above, Defendants made false representations to Plaintiff and Class Members concerning their statements that the Dermaplaning Devices provide expert care while dermaplaning. Moreover, Defendants omitted crucial information from their label, failing to disclose that the Dermaplaning Devices may increase the likelihood of material risks.

170. These Expert Misrepresentations and Material Omissions were false.

171. When Defendants made these Expert Misrepresentations and Material Omissions, they knew or should have known that they were false. Defendants had no reasonable grounds for believing that these representations were true when made.

172. Defendants intended that Plaintiff and Class Members rely on these representations and Plaintiff and Class Members read and reasonably relied on them.

173. In addition, class-wide reliance can be inferred because Defendants' Expert Misrepresentations and Material Omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dermaplaning Devices.

174. Defendants' Expert Misrepresentations and Material Omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class Members.

175. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Dermaplaning Devices if they had known that the Dermaplaning Devices have not actually been shown to provide expert care and in fact increase the likelihood of material risks.

**Count VII**
**Fraudulent Misrepresentation/Omission**
**(by Plaintiff, the Nationwide Class, and the California Subclass)**

176. Plaintiff incorporates each and every factual allegation set forth above.

177. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

178. As alleged more fully above, Defendants made false representations to Plaintiff and Class Members concerning their statements that the Dermaplaning Devices provide expert care. Moreover, Defendants omitted crucial information from their label, failing to disclose that the Dermaplaning Devices increased the likelihood of material risks.

179. These Expert Misrepresentations and Material Omissions were false.

180. When Defendants made these Expert Misrepresentations and Material Omissions, they knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

181. Defendants intended that Plaintiff and Class Members rely on these representations and Plaintiff and Subclass Members read and reasonably relied on them.

182. In addition, Subclass-wide reliance can be inferred because Defendants' Expert Misrepresentations and Material Omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dermaplaning Devices.

183. Defendants' Expert Misrepresentations and Material Omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class Members.

184. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Dermaplaning Devices if they had known that the Dermaplaning Devices do not actually provide expert care and in fact increase the likelihood of material risks.

**Count VIII**
**Breach of Contract**
**(by Plaintiff, the Nationwide Class, and the California Subclass)**

185. Plaintiff incorporates each and every factual allegation set forth above.

186. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

187. Plaintiff and Class Members entered into contracts with Defendants when they purchased the Dermaplaning Devices. A valid contract existed between Plaintiff and the Class Members, on one hand, and Defendants, on the other.

188. The contracts provided that Plaintiff and Class Members would pay Defendants for the items purchased.

189. The contracts further required that Defendants provide Plaintiff and Class Members with Dermaplaning Devices that were safe to use. These were specific and material terms of the contracts.

190. Through these contracts, Defendants expressly warranted that the Dermaplaning Devices were fit for their intended purpose.

191. Defendants made the foregoing warranties to all consumers, which became part of the basis of the bargain between Plaintiff, Class Members, and Defendants.

192. Plaintiff and Class Members paid Defendants for the Dermaplaning Devices they purchased and satisfied all other conditions of their contracts.

193. Defendants breached the contracts with Plaintiff and Class Members by failing to provide Dermaplaning Devices that were safe to use. Defendants further breached its contracts when it failed to disclose the risks of serious harm to Plaintiff and Class Members before and at the time of purchase of the Products.

194. As a direct and proximate result of Defendants' breaches, Plaintiff and Class Members were deprived of the benefit of their bargained-for exchanges and have suffered damages in an amount to be established at trial.

195. Plaintiff provided Defendants with notice of this breach of contract, by mailing a notice letter to Defendants' parent company's headquarters, on November 21, 2024.

## Count IX
## Unjust Enrichment – In the Alternative
## (by Plaintiff, the Nationwide Class, and the California Subclass)

196. Plaintiff incorporates each and every factual allegation set forth above.

197. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

198. As alleged herein, Defendants has used misleading Material Omissions on Plaintiff and Class Members to induce them to purchase the Dermaplaning Devices. Plaintiff and Class Members have reasonably relied on the misleading Material Omissions but have not received all of the benefits promised by Defendants. Plaintiff and Class Members have therefore been induced by Defendants' misleading Material Omissions about the products and paid more money to Defendants for the products than they otherwise would and/or should have paid.

199. Plaintiff and Class Members have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and Class Members.

200. The monies received by Defendants were obtained under circumstances that were at the expense of Plaintiff and Class Members—*i.e.*, Plaintiff and Class Members did not receive the full value of the benefit conferred upon Defendants. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them.

**RELIEF**

201. Plaintiff seeks the following relief for herself and the proposed Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

202. Plaintiff, on behalf of herself and the proposed Class, demands the right to a jury trial on all claims so triable.

Dated: March 6, 2026

Respectfully submitted,

By: */s/ Erica O. Nolan*
David A. Slossberg (ct13116)
Erica O. Nolan (ct31097)
HURWITZ SAGARIN & SLOSSBERG, LLC
135 Broad Street
Milford, CT 06460
T: 203-877-8000
DSlossberg@hss.law
ENolan@hss.law

By: /s/ *Zachary Arbitman*
Zachary Arbitman (phv209252)
George A. Donnelly (phv209253)
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

This is to certify that on March 6, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing. Parties may access this filing through the Court's electronic system.

*/s/ Erica O. Nolan*
Erica O. Nolan